[PHILADELPHIA, JANUARY 11, 1841.]


RITTER  *against*  FOX and Another.


IN ERROR.


A testator, after giving a house to his sister D. for life, and making certain other provisions for her, devised as follows :  " And I also give to every nephew and niece of mine an equal share of my estate :  And that if any nephew or niece of mine die, leaving no heir before the division of my estate, then his or her portion shall not be divided among his or her friends, but shall be divided equally among my surviving nephews and nieces. And whereas there is a suit against P. W.'s estate, I pledge the portion of E. S." (a niece of the testator) " to make good any loss P. W.'s estate may sustain by the said law suit so far as her portion goes, because I think it unjust that such a suit should have been commenced.  It is my will and wish that all the lawful children of the body of J. L., son of my brother C. L., shall have the portion of their father divided equally amongst them, male and female, share and share alike."  " It is my will, and wish, and hope, that all my nephews and nieces above-named may be 'satisfied with my doings," &c.  By a codicil made about two years after the will, he made certain provisions respecting the portion of one of his nephews, reciting that in his will he had given and bequeathed to his "nephews and nieces" who should be living at his decease, each a certain portion of his estate.  E. S., the niece mentioned in the will, was dead at the date of the will.  *Held*, 1. That upon the construction of the will the children of E. S. were not entitled to a share or part of the estate.  2. That parol evidence was not admissible to prove that the testator knew of the death of E. S., and that she left children ; that a suit had been brought by them against the estate of P. W., which was discontinued in consequence of a correspondence between the testator and the representatives of P. W., in which the contents of his will were made known to the latter, and communicated to the children of E. S.; and that the testator had declared that they would receive their part of his estate upon his decease.


ERROR to the District Court of the City and County of Philadelphia, to remove the record of an action on the case brought by Samuel Ritter and Catharine, his wife, against Michael Fox and Samuel Fox, executors of the will of Christian Lybrand, deceased.

The action was brought to recover one-seventh of one nineteenth part of the sum of $32,370 37, in the hands of the defendants, being the share of the estate of Christian Lybrand, deceased, alleged to have been bequeathed to·Catharine Ritter, one of his grand-nieces,

(Ritter *v.* Fox.)

and a plaintiff in the case, by his will, dated the 23d of March, 1824, and a codicil thereto, dated the 29th of August, 1826, which were in the following words.

" I, Christian Lybrand, give this house I live in to my sister Dorothy Lybrand, to live in during her life, and all the household goods in the house, and leave it to her will to take in such inmates as — may choose. And I will that she be supported out of my estate during her life, so that she shall want for nothing. And I also give to every nephew and niece of mine, an equal share of my estate. And that if any nephew or niece of mine die, leaving no heir before the division of my estate, then his or her portion shall not be divided among his or her friends, but shall be divided equally among my surviving nephews and nieces.

And whereas, there is a suit against Peter Weimer's estate, I pledge the portion of Elizabeth Stichter, formerly Elizabeth Kast, to make good any loss Peter Weimer's estate may sustain by the said lawsuit so far as her portion goes, because I think it unjust that such a suit should have been commenced. It is my will and wish that all the lawful children of the body of John Lybrand, son of my brother, Conrad Lybrand, shall have the portion of their father divided equally amongst them, male and female, share and share alike.

I do hereby nominate and appoint George Lybrand, Michael Fox, and Samuel Fox, executors.

It is my will, and wish, and hope, that all my nephews and nieces above-named, will be satisfied with my doings, but if any are not satisfied, but are desirous of bringing on a law suit, I will that he or she shall have no portion."

## Codicil.

"I, Christian Lybrand, brickmaker of Philadelphia, do make this codicil, to be taken as part of my last will and testament, as follows, that is to say—Whereas, I have been informed that my nephew, John Weimer, holds in his possession a certain sum of money belonging to his brother, Samuel Weimer, which he detains and keeps back from the said Samuel Weimer. And whereas, I have in my last will and testament aforesaid, given and bequeathed unto my nephews and nieces, who may be living at my decease, each a certain portion of my estate—the said John Weimer and Samuel Weimer being among the number of my nephews and included with them in my last will and testament aforesaid. I do hereby give full power and authority to the executors in my last will and testament named, to ascertain and determine whether the said John Weimer has so detained and kept back the certain sum of money aforesaid from his brother, Samuel Weimer, aforesaid; and if they, the said

(Ritter *v.* Fox.)

executors, do ascertain and determine such to be the fact and truth, to pay the certain sum of money aforesaid, or any part of it, to the said Samuel Weimer, out of the portion of my estate which I have given and bequeathed to the said John Weimar, provided the portion so given and bequeathed to the said John Weimer be sufficient and amount to the certain sum of money or any part of it as aforesaid, after the debt or debts of the said John Weimer due and owing to my estate are deducted out of and from the portion of my estate given and bequeathed to the said John Weimer aforesaid, and if he be living at the time of my decease."

This will and the codicil were proved at Philadelphia, and letters testamentary granted on the 30th of November, 1826.

On the trial before STROUD, J., on the 24th of February, 1836, the plaintiff's counsel gave in evidence the will and codicil, and also an account settled in the register's office by the defendants as executors of Christian Lybrand, on the 17th of May, 1831, and confirmed *nisi* on the 20th of May following, showing a balance in their hands of $32,370 37.

He also gave in evidence a part of a deposition of Peter Stichter, (taken at Reading, Pa.,) under a rule of court, as follows :

"I was intermarried with Elizabeth Kast, the widow of Jacob Kast, deceased. She was a daughter of George Lybrand, who was a brother of Christian Lybrand, a brickmaker, deceased. She had six children by Jacob Kast, deceased, viz.: Catharine, the wife of Samuel Ritter, Esther, the wife of Samuel Heller, since deceased, Eliza, the wife of Jonas Esterly, Rebecca, the wife of Joseph Shirey, Mary, the wife of Wm. Young, and Sarah, the wife of John Moyer. She had two children by this deponent, one of whom is living, aged upwards of twenty-one years. The other died when six weeks old. Elizabeth, my wife, died on the 2d of July, 1815."

The plaintiff's counsel then offered in evidence the remainder of the deposition of Peter Stichter, together with certain other depositions and exhibits annexed thereto for the purpose of showing that the testator knew of the death of Mrs. Elizabeth Stichter, formerly Elizabeth Kast, and that she had left children, at the time of the execution of his will and codicil: that a suit was pending in the Court of Common Pleas of Berks county, brought by the heirs or legal representatives of Elizabeth Kast, upon an administration bond to which Peter Weimer, deceased, was a party at the time the will was made and executed, and was the suit referred to by the testator in his will: that the contents of the will of Christian Lybrand were made known to the children of Elizabeth Kast: that a correspondence in relation to the suit had taken place between the testator and

(Ritter *v.* Fox.)

the representatives of Peter Weimer, which was communicated to the children of Mrs. Kast: that, in consequence of these matters, they abandoned and discontinued the suit, and executed a release of all demands under the administration bond or otherwise, against Peter Weimer's estate: and that the testator expressed his satisfaction- at the abandonment of the suit, and spoke of the children getting their part of his estate upon his decease.

The defendants' counsel objected to the admission of any of this evidence for the purpose for which it was offered; and the objection was sustained by the learned judge, who ruled that it was not admissible; and the plaintiff's counsel excepted.

No evidence was given on the part of the defendants.

The counsel for the plaintiffs requested the judge to charge the jury;

" 1. That although it may be true as a general rule that a grand-nephew or niece cannot take under a devise to a nephew or niece, if it stands simply and only by itself; yet if from the face of the will, and such facts are given in evidence, the intention of the testator can be fairly collected to be that a grand-nephew or grand-niece shall participate in his estate, then he or she shall be admitted so to do, notwithstanding that he or she has not been designated by that term.

2. That if the jury shall be of opinion that it was the intention of the testator to give a portion of his estate to the plaintiff, that intention must be carried into effect by the verdict.

3. That if such should be their opinion, then the portion to be given is designated by the following clause in the will, viz: " And whereas there is a suit against Peter Weimer's estate, I pledge the portion of Elizabeth Stichter, formerly Elizabeth Kast, to make good any loss that Peter Weimer's estate may sustain by the said lawsuit, so far as her portion goes, because I think it unjust that such a suit should have been commenced." And the plaintiffs will be entitled to one-seventh of the " Elizabeth Stichter, formerly Elizabeth Kast's portion." That is, to one-seventh of one-nineteenth of the whole.

4. That if the jury shall be of opinion the testator had no such intention, then he died intestate as to one-nineteenth part of his estate, and the plaintiffs will be entitled to recover as one of the heirs-at-law, one-seventh of one-nineteenth part of his estate." .

The learned judge, however, charged in substance as follows.

" No such evidence has been given as is assumed in the first and second propositions of the plaintiff's counsel. I decline, therefore, expressing any opinion upon either of them. The third point also presumes the reception of testimony which has been rejected.

(Ritter v. Fox.)

I decline giving any opinion on this point also. The fourth point is made to depend upon the third, by the manner in which it is put. It is incapable, therefore, of a distinct, intelligible answer, and I accordingly decline the expression of any opinion in regard to it."

The jury, thereupon, found for the defendants, and the plaintiffs took a writ of error, and filed the following specifications.

" 1. The judge erred in rejecting the evidence offered by the plaintiffs.

2. The judge erred in connecting the plaintiff's first and second points, and refusing to charge on both or either of them.

3. The judge erred in refusing to charge on any of the points, or upon the case."

Mr. *Jack* for the plaintiff in error, argued that the intention of the testator was to give his estate among his nephews and nieces, and their descendants, and that the parol evidence ought to have been admitted to show the state of the family, and the views and conduct of the testator in respect to them. He cited *Powell* v. *Biddle*, (2 *Dall.* 70.)    *Cuthbert* v. *Peacock*, (1 *Vernon*, 593.)    *Byrne* v. *Byrne*, (3 *Serg. & Rawle*, 62.)    *Duchess of Beaufort's case*, (2 *Vernon*, 648.) *Ball* v. *Smith*, (2 *Vernon*, 675.)    *Hoge* v. *Hoge*, (1 *Watts*, 163.) *Thompson* v. *White*, (1 *Dall.* 193.)    *German* v. *Gabbald*, (3 *Binn.* 302.)    *Thomas* v. *Stevens*, (4 *Johns. Ch. Rep.* 607.)    2 *Peere Wms.* 141.    *Vernon* v. *Henry*, (3 *Watts*, 385.)    *Lyon* v. *Chalker*, (2 *Watts*, 14.)    *Bailey* v. *Herkes*, (1 *Penn. Rep.* 126.)    2 *Saunders Plead. and Evid.*, 545, 6.    1 *Roper on Legacies*, 140, 145.    *Thomas* v. *Thomas*, (6 *Term Rep.* 671.)    *Reed* v. *Ford*, (3 *Br. Ch. Rep.* 240.)    *Deveaux* v. *Barnewall*, (1 *Dessauss. Eq. Rep.* 497.)    19 *Ves.* 604.    *Titcomb* v. *Butler*, (3 *Simons*, 417; 5 *Eng. Ch. Rep.* 183.)    *May* v. *Mazell*, (2 *Br. Ch. Cas.* 185.)    *Ambler*, 603. 681.    2 *Eden*, 194.    2 *Roberts on Wills*, 22.

Mr. *C. Ingersoll* and Mr. *Randall*, for the defendants in error.

This case has already been decided on the construction of the will *ex visceribus suis*, in an action brought in this court (*Lybrand* v. *Fox*, March Term, 1827; case stated, and on the 2d of April, 1831, judgment for the defendants,) in which the opinion of the court was given against a party standing in the same relation as the female plaintiff in this case; and real estate of considerable value has been purchased in consequence of that decision. It is now attempted to obtain a different result by the introduction of parol evidence, which is not admissible for the purpose.    2 *Powell on Devises*, 198, (ed. *Jarman*.)    *Ratcliffe* v. *Buckley*, (10 *Ves.* 203.)    2 *Roper Leg.* 328.    *Torbert* v. *Twining*, (1 *Yeates*, 437.)    *Duncan* v.

(Ritter *v.* Fox.)

*Duncan,* (2 *Yeates,* 304, 5.)   *Sword* v. *Adams,* (3 *Yeates,* 34.)   1 *Roper Leg.* 79, 92, 119, 222, &c.   *Shelley* v. *Bryer,* (1 *Jacob,* 207 ; 4 *Eng. Ch. Rep.* 97.) ` *Wusthoff* v. *Dracourt,* (3 *Watts,* 243.)

Mr. *Scott,* in reply.—

Even if the point involved in this case had been before decided, we should have a right to ask for a review of the decision. But there has not been such a decision as is supposed. The case stated in *Lybrand* v. *Fox* alleges that Elizabeth Stichter was alive at the date of the will, viz. in 1824 ; whereas it is now admitted, that she died in 1815. This is a most material fact. Whether the particular claim now in question was adverted to in the argument of *Lybrand* v. *Fox,* cannot now be ascertained, as there is no report of the case. In *Shelley* v. *Bryer,* cited by Mr. *Randall,* Sir THOMAS PLUMER admits that the term *niece* may include *grand-nieces.* There are two classes of cases in which such construction must be made. 1. Where, from the language of the will, it is clear that such was the testator's intention. 2. When extrinsic circumstances explaining an ambiguity in the will lead to the same conclusion. *Pemberton* v. *Parke,* (6 *Binn.* 606.)   *Hussey* v. *Dillon,* (*Ambler,* 603.)   It is clear that the testator supposed that his grand-nephews, &c., would take in case their parents were dead, from the words, " If any nephew or niece die, leaving no heir," &c. Now the testator, at the time of making his will, knew that Elizabeth Stichter was dead ; and hence arises an ambiguity. In his will he gives something to the children of his nephew, John Lybrand. In the codicil he recites that he has given to his *nephews* and *nieces,* &c., *each* a portion of his estate ; thus showing that under that term he includes *grand-nephews,* i. e. the children of John Lybrand. If this be a fair argument, we were entitled to the benefit of it before a jury ; it being a question of intention, and not of mere construction. The death of Elizabeth Stichter created an ambiguity ; to explain which the parol evidence ought to have been admitted.

The opinion of the court was delivered by

KENNEDY, J.—It seems to be conceded by the counsel for the plaintiffs, that from the face of the will itself, the wife being a grand-niece, and not a niece of the testator, she could not be considered as comprehended and entitled to claim as a legatee, under the denomination of "niece." But it is contended that, with the aid of the parol evidence which the court below would not suffer the plaintiffs to give, it would appear that the testator intended that the children of Elizabeth Stichter, his niece, who, being dead at the time of making the will, could take nothing herself, should have that portion of his estate which would have been coming to their mother, had she been living at the time of making the will, and the death of the testator ;

and that the wife of the plaintiff being one of seven children of Elizabeth Stichter, the niece, is entitled to one-seventh of that portion of the testator's estate which their mother would have taken, had she been living at his death. But had she been living at the time of making the will, and died before the testator's death, it is by no means certain, as has been said by the counsel for the plaintiffs, that the legacy intended for her, would not, even in that case, have lapsed without going over to her children, under the clause providing that such should be the case, in the event of any of his nephews or nieces dying, "leaving no heir *before the division* of his estate," &c. But Elizabeth Stichter was not living, and therefore was not one of the testator's nieces at the time of his making his will, and of course could not have been intended by the testator, if he knew the fact of her death then, which it is alleged by the plaintiffs he did, as one of those who was to participate in his estate. But it is argued, as he knew the fact of Elizabeth Stichter's death, at the time of making his will, he must have supposed that her children would take the share that she would have been entitled to if living, under the following devise and bequest; "I also give to every nephew and niece of mine an equal share of my estate; and that if any nephew or niece of mine die, leaving no heir," (no child or issue doubtless was meant) "before the division of my estate, then his or her portion shall not be divided among his or her friends, but shall be divided equally among my surviving nephews and nieces;" because, unless such was his notion, it is impossible almost to account for the pledge contained in the immediately following sentence, in which, after mentioning, that "there is a suit against Peter Weimer's estate," he pledges "the *portion of Elizabeth Stichter,* formerly Kast, so far as it will go, to make good any loss Peter Weimer's estate may sustain by the said law suit, because he thought it unjust that such suit should have been commenced." If, however, it were possible to imagine that the testator really entertained such an idea, and proof could be made of the fact, it would go to overturn the established rules of law, as also the meaning of the language employed by the testator; which cannot be done. When the testator pledged by his will "the portion of Elizabeth Stichter," knowing that she was dead, he pledged what he had and could not give her; though it was competent for him to pledge, as he did, that portion of his estate which she would have taken had she been living; but still that would not show, with any certainty, that he intended her children should take it. There is, therefore, no gift either to the mother or the children; and without this, the pledging of the mother's portion, in the manner he has, cannot operate as a gift to the children of so much of the testator's estate. The case of *Shelley* v. *Bryer,* (1 *Jacob,* 207,) *Roper on Leg.* 120, (Philadelphia, 1829,) seems to have been decided on this principle. In that case the testator gave the produce of the sale of his residuary real and personal estate, after the death of his sister,

(Ritter *v.* Fox.)

Susannah Shelley, equally to be divided between his nephews and nieces, who might then be living; and by a codicil gave to his " infant *niece, Harriet Shelley,*" whom he had not then seen, the sum of five hundred pounds, over and above *her share,* after the decease of his sister—in the body of his will treated of more at large. This case of Harriet Shelley, would seem to have been a stronger one in her favour than that of the plaintiffs here; for the testator designated her *by name,* as one of the objects of his bounty, expressly calling her his "niece," in the bequest of the five hundred pounds; and showing also most clearly that he thought he had given her a share of his residuary estate; yet Sir THOMAS PLUMER, Master of the Rolls, held that she was not entitled to a share in the residuary estate, devised in the body of the testator's will to his " nephews and nieces," generally: in short, that there was no gift of any portion of the residuary estate to her in the body of the will; and that the implication of such a gift was not sufficiently strong and clear in the codicil to entitle her to take a share of the same. So in *Frederick* v. *Hall,* (1 *Ves. Jun.* 396,) 2 *Roper on Leg.* 327, (Philadelphia, 1829,) the testator bequeathed all his personal estate, *except* his plate, "which is hereinafter *given to my daughter,*" to his wife; with limitations over after his death; and took no further notice of the plate. The question was, whether this amounted to a bequest to the daughter; and Lord LOUGHBOROUGH decided in the negative; observing, that he saw no manner of *giving* the plate to the daughter; nor any implication for that purpose: *non constat* whether it was to go over by executory devise like the rest of the property, or to her absolutely. Besides, to allow the plaintiff's claim in the case before us, would militate against the intention of the testator, as disclosed by the next clause immediately following that giving to every nephew and niece an equal portion of his estate, whereby he has, in language, the meaning of which is free from all ambiguity, and cannot be mistaken, excluded the children of such of his nephews or nieces as were dead at the time of making his will, from participating as legatees in his estate, unless, as it would seem, expressly designated for that purpose in some part of the sequel. For by that clause he explicitly declares, " that if any nephew or niece die, leaving no heir (meaning no child or issue) before the division of my estate, then his or her portion shall not be divided among his or her friends, but shall be divided equally among my surviving nephews and nieces." Thus excluding most clearly the children of Elizabeth Stichter; as also those of his nephews or other nieces, who were dead at the time of making his will. This, however, is not all; for it appears from the will itself, that when the testator intended to give to the children of a nephew or niece then dead, he considered it at least proper, if not absolutely necessary, in order that they might take, to do it by an express designation of them: as for instance in the case of the children of his nephew John Lybrand, who was then dead; he

last will and testament, in violation of the statute relative thereto, which requires that every thing of the sort shall be reduced into writing. It has been already sufficiently shown in this case, that the will itself contains no devise or bequest to Elizabeth Stichter; she being dead at the time it was made; nor yet to her children. Then what was the parol evidence offered for? Clearly, to show that the testator, from his conversations, and a letter written by him, but not pretended to be written as his last will and testament, or any part thereof, intended that the children of Elizabeth Stichter should have a certain portion of his estate. That is, in effect, to establish a bequest and devise in favour of the plaintiffs by parol evidence, not contained in the body of the will or its codicil. Even had the evidence been offered for the purpose of showing that the testator intended that the plaintiff should take as one of his nieces, it would still have been inadmissible: for no rule of law is more clear or more firmly settled, than that a will is not to be expounded by *extrinsic* evidence. Hence parol evidence is not admissible to show it was the intention of the testator, that *natural* children should take, under the term " children:" This must be collected from the will itself, either by express designation, or necessary implication. 1 *Roper on Leg:* 82, (Philadelphia, 1829.) The judgment is therefore affirmed.

Judgment affirmed.