# Barnett's Appeal.
# Truby's Appeal.

1. A testator left the residue of his estate to his four sisters, naming them, "and to their heirs." Two of the said four sisters were dead when he made his will, as he knew. Two others died before him, and all left issue surviving him. The testator left a widow and one grandchild. *Held*, that the legacies to the testator's sisters lapsed, and his residuary estate should be distributed under the intestate laws.

2. The word heirs is a word of limitation and is not construed as a word of purchase or of substitution unless it plainly appears from the context of the will itself that such is the testator's intention.

3. A testator left to his wife " one-third of all my personal property, excepting the proceeds or price of my farm, which I lately sold, of which I bequeath one-third of the interest that may accrue on the same to be paid to her during her natural lifetime, said bequests to her to be in lieu of dower. *Held*, that the widow was only entitled to one-third of what was left after deducting the debts and expenses of administration.

October 19th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent. CLARK, J., did not sit.

APPEALS from the Orphans' Court of *Indiana county:* Of October Term 1883, No. 213.

1. Appeal by Peter Barnett et al., children and heirs of Jean Barnett, deceased, Nancy Tomb, deceased, Rachel Cunningham, deceased, and Rebecca Knott, deceased, from a decree of the Orphans' Court of Indiana county, dismissing their exceptions filed to, and confirming the report of an Auditor appointed to audit the account of T. D. Cunningham executor of the last will of Samuel Wallace, deceased.

[Barnett's Appeal.]

2. Appeal by W. R. Truby, executor of the last will of Susan Wallace, deceased, from the same decree.

The facts appeared from the report of the Auditor, S. M. Jack, Esq., to be as follows: Samuel Wallace died January 18th 1881, leaving a will dated August 27th 1869, in which he provided as follows:

"Item First: To my beloved wife, Susan Wallace, I give and bequeath one-half of my household furniture to be divided at its appraised value, one-third of all my personal property, except the proceeds or price of my farm which I lately sold, of which I bequeath one-third of the interest that may accrue on the same to be paid to her in half yearly payments during her natural lifetime, said bequests to her to be in lieu of dower.

"Item Second: To my grandson, Speer Wallace Guthrie, I give and bequeath the sum of two thousand dollars, and also one-third part of the proceeds of the sale of my farm aforesaid, the whole of this bequest I allow to be put at interest or invested to the best advantage by my executor for the use of said Speer Wallace Guthrie, and paid over to him when he attains the age of twenty-one years, and in case of his death before he attains his majority, or without issue, then it is my will that all that I hereby bequeath to him, including also one-half of my household and kitchen furniture or the value thereof (which is hereby made part of this bequest), shall descend to and be jointly inherited by my four sisters, Jean, Nancy, Rebecca and Rachel and their heirs as provided in item fourth for the distribution of the 'residue and remainder.'

"Item Third: To my sister, Rebecca Knott, I give and bequeath the sum of five hundred dollars to be paid out of the first money in the hands of my executor.

"Item Fourth: All the residue and remainder of my estate, after paying my funeral expenses, just debts, bequests hereby made, &c., I give and bequeath to my four sisters, Jean, Nancy, Rebecca and Rachel, to each one-fourth, to them and to their heirs."

Susan Wallace died July 20th 1881, leaving a will of which she appointed W. R. Truby executor. The Auditor found that the farm referred to in the first item of the will was sold for $9,697.76; and the remainder of the decedent's personal estate amounted to $8,229.22. Truby, as executor of Mrs. Wallace, claimed that the intention of the testator was that his widow should be entitled to one-third of the latter sum before the debts and expenses were paid, and to the interest of the former sum during her life; thus throwing the expenses of administration, &c., upon the residuary legatees. The Auditor, however, deducted the debts and expenses first, and awarded one-third of the residue to her executor, together with the interest

upon the fund produced by the testator's sale of his farm accruing between the dates of testator's death and of Mrs. Wallace's death.

Rebecca Knott, the testator's sister, died during his lifetime on February 1st 1877, leaving five children and several grandchildren, the issue of a deceased son. The testator having left a lineal descendant, Speer Wallace Guthrie, the Auditor held, that the Act of May 6th 1844, § 2 (Purd. Dig. 1476) did not apply, that the legacy to her lapsed and became part of the residuary fund.

The principal contest arose upon the fourth clause of the testator's will. It appeared that Jean Barnett, who had resided about six miles from the testator, and frequently visited his house, died thirty years before his will was executed. Nancy Tomb lived in Blairsville, two miles distant, died September 21st 1865, and the testator attended the funeral. The will in question was drawn for the testator by John Barnett, a farmer and a man of advanced age at the time. The testator's two other sisters, Rebecca Knott and Rachel Cunningham died before the testator, but after the execution of his will; and all four of his sisters left issue, surviving him.

The Auditor held that the legacies to the testator's sisters lapsed by reason of their death before him, and awarded the residuary fund to those entitled under the intestate laws : viz. one-third to Truby, executor of the decedent's widow, and two-thirds to Speer Wallace Guthrie, the testator's grandson.

Exceptions filed to this report by the representatives of Jean Barnett, Nancy Tomb, Rebecca Knott and Rachel Cunningham, deceased, and by W. R. Truby, executor of Susan Wallace, deceased, were dismissed by the court, BLAIR, P. J., filing the following opinion :

I. Two of the residuary legatees were dead when this will was made, and all of them died before the testator. The Auditor held that these legacies lapsed, or were void. In opposition to this opinion, it is contended that the word heirs in the residuary clause was not used in its usual legal sense, but that testator thereby meant to bequeath to the heirs of his sisters an estate proceeding directly from him to them. It will be noticed that the Act of May 6th 1844, preserving legacies to the issue of brothers and sisters, when such legatees die before testator, does not apply, as the testator, in the present case, left a lineal descendant, in the person of Speer Guthrie, a grandson.

The weight of authority in Pennsylvania favors the conclusion at which the Auditor arrived : Sword *v.* Adams, 3 Yeates 34; Dickinson *v.* Purvis, 8 S. & R. 71; Sloan *v.* Hanse, 2 Rawle 28; Ritter *v.* Fox, 6 Wharton 99; Comfort *v.* Mather, 2 W. & S. 450; Campbell *v.* Jamison, 8 Barr 498; Gross's

[Barnett's Appeal.]

Estate, 10 Barr 360; Appeal of the Trustees, 1 Outerbridge 187. Distinctions might be attempted between these cases and the present one, but I think they would not prove very satisfactory, and would tend to confuse the principle asserted in their decisions. Here, the residuary bequest is to my four sisters, Jean, Nancy, Rebecca and Rachel, to each one-fourth, to them and to their heirs. In Gittings v. McDermott, 2 M. & K. 69, the language of the residuary clause was as follows: "All the remainder of my property of whatsoever description, &c., I give and bequeath in equal shares to each of my dear sisters, viz: to my dear sister Mary Stewart, one-half, and to my sister Sarah Gittings, the other half of the said property, and upon their death respectively, to their heirs. Lord Brougham said that if the bequest of the residue stood alone, the death of one of the sisters in the lifetime of the testatrix would have caused a lapse, and a lapse was saved in that case mainly by the use of the word or, in previous bequests. Much importance seemed to be given to this word when the bequest is to one or his heirs. In 2 Williams on Executors 1088, 5th ed., it is said: "It appears to be now established that when there is a bequest to A. or his personal representatives, or, to A. or his heirs, the word ' or,' generally speaking, implies a substitution, so as to prevent a lapse." See the force attached to it in Gross's Estate, supra, where Sorver v. Berndt, same book 213, is corrected and placed upon its proper foundation. In Sloan v. Hanse, supra, the court would not even construe the word " or " so as to save a lapse. In the present will the copulative is used instead of the disjunctive, which would make a stronger case against exceptants. It is not for us to pronounce a decree that would seem to disturb the current of decision in this state.

II. Exception is taken by counsel for the estate of Mrs. Wallace to the scheme of distribution adopted by the Auditor. She was the widow of testator, and it is thought she did not get all she was entitled to under the will. Her husband left her one-third of all his personal property absolutely, excepting, however, from this bequest the sum of $9,697.76, the price for which he had sold his farm. He gave her one-third of the interest that might accrue on this sum during her life, these bequests to be in lieu of dower. It is contended she ought to get the one-third of the absolute bequest, before deducting debts, and expenses of administration. This would give her about a thousand dollars more than the Auditor allowed her, and take an equal sum from the grandson. The reasons assigned for the adoption of this method of distribution are, that the widow is to be treated as a purchaser of what she got, and her legacy would, therefore, not abate even in favor of a child.

But it is not a question of abatement. The question is how much did testator give his widow? The will says, the one-third of his whole estate absolutely, less a certain sum, the price of his farm, out of which he creates a specific or demonstrative legacy for his grandson and another for his widow during her lifetime. The Auditor gave her the one-third of the first bequest after deducting debts and expenses of administration. The argument is that he should have given her the third before such deductions were made, in other words, that she was entitled to a third of what testator owed. If the language of the will required such a construction, we would have to follow it. But an estate consists of what is left, after the payment of debts and the expenses of administrating it, and when one-third, or any other fractional part thereof is bequeathed, we readily understand what is meant. If he had given her a specific sum, in lieu of dower, so large as not to leave enough for payment of debts, and specific legacies, these legacies would have to give way to the claims of the widow. She was not bound to accept under the will if she was dissatisfied with the provision made for her. The residuary clause does not warrant the construction so ingeniously urged on behalf of the widow. It does not say she shall have her bequest before any debt is paid. The debts are mentioned before the bequests. It provides, as residuary clauses usually do, that after payment of funeral expenses, debts and bequests, the remainder shall go as directed. It would require much plainer language than this to show that testator meant to give his widow a sum equal to one-third of his debts and expenses of administration in addition to the one-third of his estate.

Exceptions dismissed and report confirmed : whereupon, Peter Barnett et al., children and heirs of Jean Barnett, Nancy Tomb, Rachel Cunningham and Rebecca Knott, deceased, and W. R. Truby, executor of the last will and testament of Susan Wallace, deceased, took these appeals, assigning for error the decree of the court, dismissing their exceptions and confirming the Auditor's report.

*J. N. Banks* (with whom was *A. W. Taylor*), for the heirs of Jean Barnett, Nancy Tomb, Rebecca Knott and Rachel Cunningham, appellants.—Where personal property is bequeathed to one and to his heirs, the word heirs is held to be a word of substitution and not of limitation : Hawkins on Wills 180 ; 2 Redfield on Wills 163 ; Taylor *v.* Conner, 7 Ind. 119 ; Flournoy *v.* Flournoy, 1 Bush 515 ; Hallowell *v.* Phipps, 2 Wharton 381. In this state it has been decided that in a bequest of personalty "heirs" is to be construed "representatives or distributees :" Eby's Appeal, 3 Norris 241. The cases

relied on by the appellees do not apply. In Guthrie's Appeal, 1 Wright 13, the word "heirs" in a devise was held to mean "children." In Comfort v. Mather, 2 W. & S. 450 there was an absolute bequest to the legatee and to none other: Sloan v. Hanse, 2 Rawle 28 was a question of a devise of real estate. In that case as in Dickinson v. Byron, 8 S. & R. 71, testator was not aware of the death of his legatees when he made his will. Here, the bequests to the testator's two sisters whom he knew to be dead when he made his will should not be held to lapse. Those who were in his mind as the objects of his bounty could not have been his dead sisters but their children ; and this interpretation would not only effectuate his intention but prevent intestacy.

*M. C. Watson*, for W. R. Truby, executor of Susan Wallace, deceased, appellant (with him *E. H. Moorhead*, for the residuary legatees under the will of Susan Wallace, deceased).—The testator does not give his wife one-third of his net estate, but one-third of his personal property, excepting a certain fund. She takes the legacy in lieu of dower, and therefore takes the one-third of one of these funds before it is diminished by testator's debts, &c.

These legacies having been given to the widow in lieu of her dower, and so expressed in the testator's will and as such accepted by her, this act of relinquishment of her rights at law makes her a purchaser for value of the bequest so given and accepted, and such bequest cannot be abated to answer testator's debts until the whole of testator's like estate is exhausted. In our case no one can be affected but the residuary legatees, and the law casts upon them the burden of testator's debts and expenses of administration : Ward on Legacies 374 ; Kirk's Estate, 8 Weekly Notes 107 ; Reed v. Reed, 9 Watts 263 ; Earp's Will, 1 Parsons 460 ; McGlaughlin v. McGlaughlin, 12 Harris 22 ; Duncan v. Alt, 3 P. & W. 382 ; Conrad's Appeal, 9 Casey 49 ; Walker v. Dunshee, 2 Wright 430.

*George W. Hood*, for Speer Wallace Guthrie, appellee.

The opinion of the court was delivered January 7th 1884 by Mr. Justice PAXSON.

The testator left a widow and one grandson surviving him. He left no other lineal descendants. After providing for the widow and grandson by his will, he gave a legacy of $500 to his sister Rebecca Knott, and then disposed of the residue as follows : " All the rest and remainder of my estate, after paying my funeral expenses, just debts, bequests hereby made, &c., I give and bequeath to my four sisters, Jean, Nancy,

Rebecca and Rachel, to each one-fourth, to them and to their heirs."

Two of the sisters, Jean and Nancy, were dead at the time the testator made his will, and this fact was known to him. The other sisters Rebecca and Rachel died during the lifetime of the testator. All of them left children who survived the testator. The Auditor and the court below held that the legacies to all of the sisters lapsed by reason of the death of the respective legatees during the life of the testator, from which ruling this appeal was taken.

It was urged for the appellants that the word "heirs" in the residuary clause was not used in its ordinary sense as a word of limitation, but that the testator intended it as a word of purchase, and to bequeath to the heirs of his sisters an estate proceeding directly from him to them. A number of authorities were cited to show that in wills the word heirs is sometimes construed to mean children. Guthrie's Appeal, 1 Wright 13, was especially relied upon, where Justice STRONG said: "Undoubtedly the word heirs may be shown by the context to have been used in the sense of sons, daughters, children, &c., and when it is so used the rule in Shelley's case is inapplicable." There are several cases where the word "heirs" has been held to mean children, but they were all instances where such was the evident intent of the testator as gathered from the will itself. This will contains nothing from which such an intent can be inferred. And the fact that the testator knew that two of his legatees were dead when he made his will, and intended the legacies to go to their children, can make no difference unless he has expressed his intention in his will: Sword *v.* Adams, 3 Yeates 34; Comfort *v.* Mather, 2 W. & S. 450; Campbell *v.* Jamison, 8 Barr 498; Sloan *v.* Hanse, 2 Rawle, 28; Dickinson *v.* Purvis, 8 S. & R. 71; Ritter *v.* Fox, 6 Wharton 99.

It would be unprofitable to pursue this subject further; indeed I would have not said so much but for the reason that we were asked to abate somewhat the rigor of the old rule, and give effect to what the appellants contend was the intent of the testator. Our answer is that the decree of the court below carries out the testator's intent so far as he expressed it in his will, and that the rule referred to is a rule of property, sustained by a long line of authority both in England and in this country and too firmly embedded in our system of law to be uprooted by anything short of an Act of Assembly. There are already two statutes in this state which have to some extent modified the rule of the common law, viz: the Act of April 8th 1833, which saves the lapse in favor of a child or other lineal descendant, and the Act of May 6th 1844 which contains a similar pro-

[Montgomery v. Cunningham.]

vision in favor of the children of a brother or sister where the testator leaves no lineal descendants. Neither Act applies to this case.

There is no merit in the widow's claim to have the testator's debts, expenses of the administration and costs of audit deducted from the residuary fund. There is no residuary fund until the debts and expenses are paid. The testator gave his widow one-third of all his personal property absolutely, excepting however from this bequest the money for which his farm should be sold. This amount was $9,697.76. He gave her the interest on one-third of this for life; the two bequests to be in lieu of dower. The claim of the widow would add about $1,000 to her share, and deduct that much from the grandson. The reason assigned for her claim is that the bequests in her favor are in lieu of dower; hence she is a purchaser, and as to her there can be no abatement. It is not a question of abatement. The gift of one-third of the personal estate is a gift of one-third of what may be left after the payment of debts and expenses. As this is all her husband left her there is no abatement. We find no error in this record.

The decree is affirmed and the appeals dismissed at the costs of the respective appellants.