## Kessler's Estate.

*Wills—Construction—Legacies—Cumulative and repetitive.*

1. Where testator gave $80,000 out of the principal of his estate to the A Company, "Guardian hereinafter appointed," for his grandson, in trust to pay the income thereof, at its discretion, for his maintenance and education, not exceeding $2000 per annum, the balance to be accumulated and the principal and accumulations to be paid at full age, with a gift over in case of his death to "my children and their issue," and, by a subsequent clause, directed his trustees to make distribution of his estate upon the death of his widow, "$80,000 to the guardian" of his grandson, the second gift is a repetition of the first, and the grandson is entitled to the sum of $80,000 only.

2. The gifts do not differ in quality; the grandfather had no power to appoint a testamentary guardian for his grandson, and such a guardian is really a trustee.

*Wills—Construction—Gifts to children as a class distinguished from gifts to children as individuals.*

3. Where testator's family, at the time of the execution of the will, consisted of his wife, five children, a grandchild, son of a deceased daughter who had died a few days before the date of the will, and four other grandchildren, who were not referred to except under the general term "issue," and, after giving his entire estate to trustees and directing them to pay, out of the income, annually $12,000 to his wife, $2500 to his daughter and to each of his sons a like sum, naming his daughter and sons, testator directed his trustees to pay the guardian of his grandson $80,000, and on the death of his widow, after repeating the gift of $80,000 to the guardian, to divide the residue among his children who might then be living, share and share alike, the issue of any deceased child taking only its parent's share, the grandson is entitled to the gift of $80,000 only and takes no interest in the residuary fund.

4. In gifts to a class, where the clause in question or other parts of the will show that testator thought of the members of the class as individuals, such intent will be carried out; but where he names all his living children and the issue of a deceased child, and afterwards uses the class term "children," he must be presumed to comprehend in that class only the individuals whom he theretofore has specifically named.

Exceptions to adjudication. O. C. Phila. Co., April T., 1925, No. 1686.

The relevant provisions of the will under discussion were as follows:

"All of my estate Real and personal and mixed of which I die possessed or entitled to, I give, devise and bequeath unto my Executors and Trustees hereinafter named and the survivor or survivors of them in trust to and for the following purposes to invest, reinvest and keep invested in good and lawful securities to collect the rents, income, issues and profits therefrom and to pay over annually unto my dearly beloved wife Elizabeth Kessler the sum of Twelve Thousand Dollars for and during the term of her natural life she also to have the free use as long as she may desire of our home at 2029 N. Broad St. and the contents thereof. I also direct my Executor and Trustees to pay over annually the sum of Two Thousand Five hundred dollars to my Daughter Mrs. Frank H. Martin, the same amount to my Son Geo. Kessler, Jr., the same amount to my Son Harry C. Kessler, the same amount to my Son Chas. A. Kessler and the same amount to my Son Robert H. Kessler. I also authorize and direct my Executors and Trustees to pay unto the Guardian of my grandson George Kessler Schaeffer such sum or sums of money from the income of my estate as they in their discretion may deem necessary for the proper support, maintenance and education of my said Grandson, not exceeding Two Thousand dollars yearly. immediately after the death of my dear Wife Elizabeth Kessler, I order and direct my executors and trustees to pay over to the Integrity Trust Co. Guardian hereinafter appointed for my said Grandson, Geo. Kessler Schaeffer, the sum of Eighty Thousand dollars

($80,000) in trust nevertheless to, for and upon the following uses and intents and purposes that is to say to invest and keep the principal of this trust fund and to pay from the income of this fund such sum or sums of money as my said Guardian may in his consideration deem necessary for the proper support, maintenance and education of my said grandson George Kessler Schaeffer not exceeding Two Thousand dollars per annum. the balance of said income of said Trust Fund I direct the said Guardian to add to the principal of this trust fund during the minority of my said grandson. immediately upon the arrival of my Grandson George Kessler Schaeffer at the age of Twenty One (21) years I order and direct the said Guardian to pay the principal and accumulated income of this trust fund unto my said Grandson George Kessler Schaeffer absolutely. should my said grandson George Kessler Schaeffer die before he arrives at the age of Twenty-one (21) years, then I give and bequeath the principal and accumulated income of this trust fund to my children and their issue such issue taking by representation absolutely. immediately after the death of my dear Wife Elizabeth Kessler I order and direct my executors and trustees or the survivor or survivors of them to make the following division and partition of my estate. Eighty Thousand dollars ($80,000.00) to the Guardian of my grandson George Kessler Schaeffer, the residue of my estate Real and personal of which I may die possessed I give, order and direct my executor and trustees or the survivor or survivors of them to my children who at the time may be living share and share alike. the issue of any of my children taking and receiving only the parent's share. should any of my children die without issue then he or her share to be divided equally between the surviving heirs share and share alike."

*Clement B. Wood* (of *Morgan, Lewis & Bockius*), for Arthur Littleton, Guardian *ad litem* of George Kessler Schaeffer.

*Fletches W. Stites*, for George Kessler, Jr., and Charles A. Kessler.

*Wolf, Patterson, Block & Schorr*, for Harry C. Kessler, Robert H. Kessler and Anna Kessler Martin.

HENDERSON, J., April 23, 1926.—The testator having amassed a fortune of upwards of $800,000 was so sanguine of his ability to dispose of it intelligently, unaided by professional skill, that he left the will in question; and his success is measured by the various and conflicting interpretations urged upon us. In the endeavor to discover his actual intent, we are admonished to confine ourselves to a consideration of his language, his family and the circumstances by which he was surrounded and influenced in forming that intent.

At the time he wrote his will, and at the time he died, testator's family consisted of his wife, five children and a grandchild, the son of a daughter who had died about twelve days before the date of the will. The wife, the five children and this grandson are the persons clearly in the mind of testator as individuals when he sat down to write his will, for he sets out their names in full. There were, however, four other grandchildren, but, so far as he had them in mind, they are embraced in the class "issue."

The language of his will also clearly discloses his purpose to dispose of the income of his estate separately from, and independently of, the principal. He gave his entire estate to trustees, to pay out of income annually (with the free use of his residence) $12,000 to his wife, Elizabeth Kessler; $2500 to each—to his daughter, Mrs. Frank H. Martin, and his sons, George Kessler, Jr., Harry C. Kessler, Charles A. Kessler and Robert H. Kessler—and authorized and directed his trustees to pay to the guardian of his grandson, George Kessler Schaeffer, for his proper support, maintenance and education, a sum

not exceeding $2000 yearly. He made no further disposition of the income which the account shows to be considerably in excess of the annuities.

From this it is evident that the persons individually named were all and the only objects, thus far, of his bounty, and that he did not expect distribution of principal until the actual death of his wife. His wife, however, elected to take against his will; and this was equivalent to her actual death, and operated as a revocation of the will *pro tanto* and accelerated the remainders: Disston's Estate, 275 Pa. 537.

He then carved out of principal the sum of $80,000, which he directed paid to the "Integrity Trust Co. Guardian hereinafter appointed for my said Grandson, Geo. Kessler Schaeffer," in trust, to pay the income thereof at its discretion for his proper support, maintenance and education, not exceeding $2000 per annum, the balance accumulated, and principal and accumulations paid him immediately upon arriving at full age, with limitation over thereof, in case of his prior death, to "my children and their issue, such issue taking by representation absolutely."

He then proceeds: "Immediately after the death of my dear wife Elizabeth Kessler I order and direct my executors and trustees or the survivor or survivors to make the following division and partition of my estate: Eighty Thousand Dollars (80,000) to the Guardian of my grandson Geo. Kessler Schaeffer, the residue of my estate Real and personal of which I may die possessed I give order and direct my executor and Trustees or the survivor or survivors of them to my children who at the time may be living share and share alike, the issue of any of my children taking and receiving only the parent's share. Should any of my children die without issue then he [his] or her share to be divided equally between the surviving heirs share and share alike."

The election by the widow took one-third of the principal, and of the balance, the Auditing Judge awarded $80,000 to the trustees for the grandson, refused his claim for an additional $80,000 outright, but gave him an equal share with testator's five children in the residue.

To these awards exceptions are filed, both on behalf of the grandson, to the effect that he should have been also awarded $80,000 outright; and on behalf of testator's five children, who except to the award to the grandson of any share in residue.

It may assist in the better understanding of testator's attitude when we bear in mind that, as to gifts of income, the testator names five persons as children—and they were all his children then living—and also names his grandson, the child of his recently deceased daughter, and subsequently uses the class term "children" only. It would seem that, as principal is clearly intended to go to the grandson by name and to "children" as a class, the testator must have had in mind as constituting the members of the class his five then living children before named, for, as to the first mention of a gift of $80,000, the gift over on the death of the grandson during minority is to "my children and their issue," and it would be a strained construction to hold that the deceased daughter was thought of as a member of that class.

In gifts to a class, where the clause in question, or other parts of the will, shows that the testator thought of the members of the class as individuals, such intent of the testator will be carried out: Packer's Estate (No. 2), 246 Pa. 116; and the converse would seem to follow also, that where a testator names all his living children and names the issue of a deceased child, and afterward uses the class termed "children," he must be presumed to comprehend in that class only the individuals whom he theretofore had specifically named. If in this first clause the testator by the term "children" meant his

five living children, the interpretation of the will becomes simple. The term "children" is subsequently used with reference to residue, although with the qualification that the "children" must be living at the time of distribution. When a testator uses even as highly technical a word as "heirs" in its popular sense in one part of his will, he is to be considered as having used it with the same meaning throughout: Wettach v. Horn, 201 Pa. 201.

The will contains two recitals of legacies of $80,000 in favor of the testator's grandson, George Kessler Schaeffer. The Auditing Judge awarded one sum of $80,000 to the so-called testamentary guardian, and exceptions were filed complaining that a second sum of $80,000 should have been awarded to the grandson, on the theory that, while they were given in the same instrument, and, hence, were presumptively repetitive, they were, nevertheless, of a different quality, and for that reason were cumulative.

The will is inartificially drawn and phrased, and what appears to be a second gift is in reality but a repetition of the first one.

It should be observed that the first gift is introduced by the phrase "immediately after the death of my dear wife," and is in form a direction to pay to the "Integrity Trust Co., guardian hereinafter appointed for my said grandson" the sum of $80,000, "in trust nevertheless to for and upon the following uses and intents and purposes that is to say to invest and keep the principal of this trust fund and to pay from the income of this fund such sum or sums of money as my said Guardian may in his consideration deem necessary for the proper support maintenance and education of my said grandson George Kessler Schaeffer not exceeding Two Thousand dollars per annum. The balance of said income of said Trust Fund I direct the said Guardian to add to the principal of this trust fund during the minority of my said grandson. Immediately upon the arrival of my grandson George Kessler Schaeffer at the age of Twenty-one (21) years I order and direct the said Guardian to pay the principal and accumulated income of this trust fund unto my said Grandson George Kessler Schaeffer absolutely. Should my said grandson George Kessler Schaeffer die before he arrives at the age of Twenty-one (21) years, then I give and bequeath the principal and accumulated income of this trust fund to my children and their issue such issue taking by representation absolutely."

The second recital commences in the same paragraph and directly after the foregoing, and in the following language: "immediately after the death of my dear Wife Elizabeth Kessler I order and direct my executors and trustees or the survivor or survivors of them to make the following division and partition of my estate. Eighty Thousand dollars ($80,000) to the Guardian of my grandson George Kessler Schaeffer, the residue of my estate Real and personal of which I may die possessed I give order and direct my executor and Trustees or the survivor or survivors of them to my children who at the time may be living share and share alike."

The original gift is to paid "immediately" after the death of his wife, and the second mention of an $80,000 legacy is a mere recital of what is to be done, and done first, immediately after the death of the wife, and the fact that it is a mere recital further appears because it is contained in a direction to make partition of the estate, and in this partition the $80,000 is first to be set aside.

It is urged the gifts are of a different quality, and, hence, cumulative. But are they?

The so-called testamentary guardian is an appointment by a grandfather for a grandson. A grandfather has no power to name a guardian; hence, his

designatee is really a trustee and only has dominion over the fund given by the grandfather. See Mathiesen's Estate, 22 Dist. R. 481; Garraty's Estate, 1 D. & C. 307.

The original gift is a full-fledged trust, one which would not be committed to a true guardian, as such. It is for the support of the minor until he is of age, with a gift over should he earlier die. The second alleged gift is merely "$80,000 to the guardian of my grandson George Kessler Schaeffer"—a bare recital of the legacy proper as the first thing to be paid—"immediately" on the death of the wife, and, as well, the first thing to be done in the "division and partition of my estate." It is not necessary for him, in directing the partition, completely to recite the terms of the trust committed to the "testamentary guardian."

This guardian is in law the testator's trustee. He has given $80,000 to this trustee and completely defined the trust. In the same instrument we find mention of a sum of $80,000 to the same trustee—but without more. The reasonable interpretation would be for precisely the same trusts, and, hence, repetitive in character. We do not see why we should make any different interpretation because the testator has called his trustee a guardian.

The exceptions to the refusal of the Auditing Judge to award a second legacy of $80,000 are dismissed, and in this action Lamorelle, P. J., and Van Dusen, J., concur.

But we also think that when the testator had made the foregoing provision for his grandson, he dismissed him from his mind as a beneficiary. Having in the first part of his will particularly set forth the names of his then living children, we think he must have had them individually, and them only, in mind when thereafter he referred to his children as a class. Such individualization is explicitly recognized in Packer's Estate (No. 2), 246 Pa. 116; and if this interpretation expresses testator's attitude of mind with reasonable exactness, he could not have intended his grandson to share in residue.

A mathematical calculation of the results of the various claims and awards may be interesting, if not useful, as bearing on testator's actual intent.

According to the contention of testator's children, and which is adopted by this opinion, the distribution, in round numbers, should be

| | |
|---|---|
| Amount for distribution to legatees | $534,000 |
| Awards to trustee for grandson | 80,000 |
| Amount to be distributed to five children | $454,000 |
| Or each | $90,000 |

(which, with contingent interest in $80,000, if the grandson dies during minority, would give each child $106,000).

According to claim for grandson:

| | | |
|---|---|---|
| Amount for distribution | | $534,000 |
| Amount to trustee for grandson | $80,000 | |
| Absolute legacy to him | 80,000 | |
| | | 160,000 |
| | | $374,000 |
| Distributable in sixths, or each, child and grandson. | | $62,000 |

Giving the grandson absolutely $142,000, and if he attains full age $80,000 additional, or $222,000, while the children get an absolute sum of $62,000, with a contingent interest of $16,000 each additional.

Kessler's Estate.

Taking the whole will into consideration, as well as testator's family and circumstances surrounding him, we are of opinion that his actual intent, however clumsily expressed, was to give the balance of his estate to his children, and in this action the entire court concur. The exceptions of the children to the action of the Auditing Judge in awarding a share of the residue to the grandson are sustained.

The adjudication is modified in accordance with this opinion, and, as modified, is confirmed absolutely.

VAN DUSEN, J., concurring.—I concur in sustaining the exceptions as to distribution of the residue for the reasons just given, but think it worth while to refer to a body of decisions which throw some additional light on the question. Precedents can be overvalued in construing wills, but what other men have thought under much the same circumstances is a guide to right thinking. The cases will be found collected in the note at 40 Cyc., 1522.

Where the gift to issue of children who may die is substitutionary, it plainly follows that the issue of a child who is dead at the date of the will are not included, for there is no primary gift to the ancestor and nothing for which to make substitution. The difficulty is to know whether the gift to the issue is substitutionary or is itself primary. There is little to aid construction; the result is often elusive, and I would not be able to reconcile all the cases. If looked at coldly, the gift to issue is generally substitutionary, and it has been so regarded in most cases, including Ritter v. Fox, 6 Wh. 99. Where there is no other provision for the issue of a child already deceased, the result is harsh, and it is not to be wondered at that contrary opinions are found in Park's Estate, 21 W. N. C. 227, by Judge Penrose, and In re Smith, 5 Ch. Div. 497 (note), by Sir George Jessel.

In the present case, as there is other provision for this issue of a child already deceased, and as the gift to issue is expressly called "the parent's share," I now think that it is substitutionary. Long v. Labor, 8 Pa. 229, is influenced by the lack of any such special treatment of the son of a child already deceased. Because of a general plan of equality in the body of the will including the grandson, it was considered in that case that he was not to be omitted from the residuary clause.