## Collins's Estate.

*Legacies—Lapsing—Death of legatee in lifetime of testator—Gift to legatee, his heirs and assigns—Substitution.*

1. Where legacies are given to a number of person named, "their heirs, executors, administrators and assigns" and subsequent paragraphs contain the provision in regard to three of the legacies that "should he (the legatee) not survive me, then I direct that the legacy . . . shall lapse and fall into my residuary estate," such clauses, applying to three of the legacies only, indicate that the words "heirs, executors," etc., were employed as words of substitution, and the other legacies do not lapse by the death of the legatee in the lifetime of testator.

Barnwell's Estate, 29 Dist. R. 317, followed.

*Decedents' estates — Distribution — Legacy to non-resident minor—Payment to parent under law of foreign state—Security—Act of June 7, 1917.*

2. Where a minor legatee resides in another state, the laws of which give the father the right, as statutory guardian, without entry of security, to receive and administer the legacy, the court will direct payment of the legacy to the father, but will require him to enter security as required by section 58 (a) of the Fiduciaries Act of June 7, 1917, P. L. 447.

Adjudication of executor's account. O. C. Phila. Co., Jan. T., 1927, No. 616.

J. Snowdon Rhoads, for accountant and Collins, administrator.

H. Horace Dawson, for Commonwealth.

GEST, J., June 11, 1927.—Thomas Earl Collins died on April 23, 1926, unmarried and without issue, leaving a will admitted to probate on April 30, 1926, when letters testamentary were granted.

Proof of advertisement of notice thereof was produced to the Auditing Judge.

By the second paragraph of his will, the testator bequeathed the following legacies to the persons named, their heirs, executors, administrators and assigns, to wit, fourteen pecuniary legacies to his cousins, as stated in the petition for distribution (among which were a legacy to Walter C. Baker of $1000, a legacy to Walter A. Collins of $3000 and another to Thomas Collins Earl of $5000). The testator then proceeded as follows:

Collins's Estate.

"3rd: I give and bequeath to my cousin Ernest H. Chase Three thousand dollars—$3000—Should he not survive me, then I direct that the legacy herein bequeathed shall lapse and fall into my residuary estate. Also I give and bequeath to my friend Bradford Ritter Three thousand dollars—$3000. Should he not survive me, then I bequeath the said Three thousand dollars to his widow, Helen M. Ritter. Should neither of the said Bradford Ritter or Helen M. Ritter survive me, then I direct that the legacy herein bequeathed shall lapse and fall into my residuary estate.

"4th: I direct that the sum of One thousand dollars—$1000—be paid to my cousin Mary H. Taylor as soon after my death as may be convenient. Should she not survive me, then this legacy shall lapse and fall into my residuary estate. This legacy is intended to meet immediate wants until income from the residuary estate is available."

By the sixth paragraph of his will, the testator directed that all his bequests should be free and clear of any deduction on account of collateral inheritance or other succession tax or taxes, which he directed should be paid from his residuary estate; and the rest, residue and remainder of his estate he bequeathed to the Girard Trust Company in trust to pay over the income, one-half to his cousin, Mary H. Taylor, and one-half to his cousin, Katharine E. Freedley, during their respective lives, with further provisions in remainder which it does not seem necessary to recite.

Ernest H. Chase, a legatee of $3000, survived the testator and died on May 10, 1926, leaving a will, of which Anna T. Chase is executrix, which legacy will be awarded to his executrix. Walter A. Collins died on Oct. 7, 1925, before the testator. Edmund H. Lovett is administrator of his estate. It was urged in behalf of the administrator that this legacy, under the language of the will, did not lapse notwithstanding the prior death of the legatee, but is payable to his administrator. Mr. Rhoads submitted a brief in his behalf, and no argument was made to the contrary by the Girard Trust Company as trustee of the residuary estate.

The argument on behalf of the administrator of Walter A. Collins is based upon the phraseology of the will, by which the testator prefaced the fourteen bequests to his cousins with the words "I give and bequeath the following legacies to the persons named, their heirs, executors, administrators and assigns." Then followed the legacies, including that in question. In the third and fourth paragraphs of the will, above quoted, the legacies to the other legatees are followed by the words, "Should he (or she) not survive me, then I direct that the legacy herein bequeathed shall lapse and fall into my residuary estate." This difference of phraseology, as it was argued, shows that the testator did not overlook the question of lapse, and inserted the words "heirs, executors, administrators and assigns" in the second paragraph for the express purpose of preventing a lapse.

The lapse of a bequest by the death of the legatee before that of the testator is a necessary consequence of the ambulatory nature of wills, under which nothing passes until the testator dies, and, in fact, a testamentary gift is predicated on the belief that the legatee will survive the testator. The added words "their heirs, executors, administrators and assigns" are, under all the decisions, words of limitation and not of purchase (Jarman on Wills, 6th ed.), 423; 2 Williams on Executors (11th ed.), 958), and, indeed, the use of the word "assigns" strengthens this theory, because it assumes that the legatee will survive, for otherwise it would not be possible for him to assign his legacy. Had the gift been to the legatee or his heirs, etc., there would be substantial ground for holding the gift to be substitutionary: 2 Jarman on

Wills (6th ed.), 1316; 2 Williams on Executors, 962; but in Shoenberger's Estate, 22 Dist. R. 126, where the gifts were to legatees, their heirs, legal representatives "or" assigns, they were held subject to lapse. The general rule has been so consistently followed in Pennsylvania that it is only necessary to cite Barnett's Appeal, 104 Pa. 342; Worsley's Estate, 4 Dist. R. 177; Niblock's Estate, 27 Pa. C. C. Reps. 193, and Gaumer's Estate, 27 Dist. R. 337. The rule being clear, any exception to it, founded upon the context in the will, should be equally clear, and I doubt whether the subsequent clauses, relied upon in the argument, are sufficient, relating, as they do, to different legacies to other legatees. I have been referred to no case which precisely rules the present, but I observe that this court, in Barnwell's Estate, 29 Dist. R. 317, decided a very similar question. There, the legacy was given to Ann Kennedy and to her heirs and assigns, and a subsequent gift of an annuity was made to Rebecca Gaston, the testator declaring that it was "not to her heirs and assigns." This court held that this was a sufficient indication that the testator employed the words "heirs and assigns" in the prior legacy as words of substitution; therefore, the legacy did not lapse by Ann Kennedy's death before the testator. The phraseology in the present case is perhaps stronger than that construed in Barnwell's Estate, *supra*, and, on the authority of that case, I hold that the legacy to Walter A. Collins did not lapse, and it will be awarded to Edmund H. Lovett, referred to as administrator.

Walter C. Baker is a minor, and his father, William Ludwig Baker, by his will admitted to probate Feb. 21, 1923, appointed Frances C. Baker as guardian of the person and estate of said Walter C. Baker. His legacy will, therefore, be awarded to Frances C. Baker as such testamentary guardian.

According to the statements of counsel in Louisiana, Thomas Collins Earl is a minor, domiciled in Louisiana, who will be twelve years old in June, 1927. He resides in New Orleans with his father, George C. Earl, and his mother, Mr. Earl's wife.

The statement of the law of Louisiana upon the subject is, according to the brief of counsel, as follows:

"Article 221, as set forth in section 1, chapter 5, Title VII, of the Revised Civil Code of Louisiana (Merrick's Revised Civil Code (3rd ed.), 1925, page 80), provides as follows:

" 'The father is, during the marriage, administrator of the estate of his minor children, and the mother, in case of his interdiction or absence, during said interdiction or absence.

" 'He or she shall be accountable both for the property and revenues of the estates, the use of which he or she is not entitled to by law, and for the property only of the estates the usufruct of which the law gives him.

" 'This administration ceases at the time of the majority or emancipation of the children.'

"Article 223 of the same section (Merrick's Revised Civil Code (3rd ed.), page 80) provides as follows:

" 'Fathers and mothers shall have, during marriage, the enjoyment of the estates of their children until their majority or emancipation.'

"Article 3350, section 1, chapter 2, Title XXII, of the Revised Civil Code of the State of Louisiana (Merrick's Revised Civil Code (3rd ed.), page 104), provides as follows:

" 'Before fathers or mothers, who by law are entitled to the usufruct or property belonging to their minor children, shall be allowed to take possession of such property and enjoy the fruits and revenues thereof, they shall cause an inventory and appraisement to be made of such property, and cause the

same to be recorded in the mortgage book of their parish in the state where they or either of them have immovable property.' "

It further appears:

"Upon the death of either the mother or father, or upon the termination of the marriage relationship, the surviving parent or the parent obtaining the divorce or separation becomes the natural tutor (guardian) of the minor child. See article 250, section 1, chapter 1, Title VIII, of Louisiana Civil Code.

"Article 318 of section 10, chapter 1, Title VIII, of said Code provides as follows:

" 'Security to be given by the tutor. Every tutor, except the mother and father and the tutor appointed under the provisions of article 271, shall give good and sufficient security for the fidelity of his administration.

" 'This security must be for a sum equal to the amount of the credits, money and other movable effects stated in the inventory, and such other sum as the judge shall deem sufficient to cover any loss or damage which the tutor may occasion to the minor by his bad administration.

" 'This security may be increased or diminished on the demand of the under-tutor, or any relation of the minor, as the disposable funds of the estate may increase or diminish.' "

It seems to be very clear that, under the law of Louisiana, the father of this minor would be entitled, without the entry of security, to receive and administer the legacy bequeathed to the minor in that state. He is a guardian by statute, and his rights, duties and responsibilities would be determined by the domiciliary law. But it does not follow from this that the father has any extraterritorial powers. On the contrary, section 58 (b) of the Fiduciaries Act provides, in substantial re-enactment of section 7 of the Act of March 29, 1832, 1 Purd. 1085:

"Except as hereinafter provided, no appointment of a guardian, made or granted by any authority out of this State, shall authorize the person so appointed to interfere with the estate or control the person of a minor in this State: Provided, that such foreign guardian may, at the discretion of the Orphans' Court having jurisdiction, be appointed by said court on giving security for the due performance of his trust."

And section 58 (g) expressly provides for a case like the present and requires, in order that the foreign guardian may remove from this State the property of his ward, that he shall enter security in double the amount thereof with special reference to their property. It is true that section 59 (d) would prohibit us from appointing the father of a minor as the guardian of his estate, the policy of our law differing therein radically from that of Louisiana, which latter, I apprehend, is derived from the Roman law of the *Patria Potestas*. That, however, is a matter of domiciliary legislation which it would be impertinent for us to ignore. In like manner, so far as the capacity of a legatee to take is concerned, the law of the domicile governs. A legatee domiciled in Ohio, where the age of majority is eighteen instead of twenty-one, as with us, is entitled to receive the legacy: Huey's Appeal, 1 Grant, 51; Moffitt's Estate, 32 Pitts. L. J. 414; Keech's Estate, 240 Pa. 491; or, if a minor legatee has been duly emancipated, under the domiciliary law, he will be entitled, as in Wooten's Estate, 26 Dist. R. 734.

In my opinion, therefore, the statutory rights of George G. Earl as the father of the minor legatee should be recognized, but those rights, when exercised in this State, are subject to our laws, as above stated in section 58 (g) of the Fiduciaries Act.

In coming to this conclusion, I have not overlooked the provisions of this section of the act requiring that it should be found "that a removal of the property will not conflict with the terms or limitations attending the right by which the ward or *cestui que trust* owns the same," from which it might be argued that the fund should not be removed because the father, under the law of Louisiana, appears to be entitled to the usufruct of his son's legacy. I think this possible objection is met by the consideration similar to those above mentioned, namely, that the enjoyment of the minor legatee of his legacy is subject to and regulated by the laws of the state in which he is domiciled.

The pecuniary legacies have been paid in advance by the accountant upon request of the life-tenants. See on this point, Gill's Estate, 24 Dist. R. 1.

The credit taken in the distribution account to George G. Earl of the legacy of $5000 bequeathed to Thomas Collins Earl must be stricken out, and the legacy will be awarded to him upon compliance with section 58 of the Fiduciaries Act. Inheritance tax has been paid on account on the sum of $195,000 at 10 per cent., less discount, $17,575, and further tax will be awarded.

The balance of principal, composed as stated, is $173,157.28, which, subject to payment of further tax as the same may be assessed, and subject to the payments properly made on account of distribution, will be awarded to the legatees in accordance with the will and this adjudication.

The balance of income is $4795.40, which is awarded in equal shares to Mary H. Taylor and Katharine E. Freedley.

And now, June 11, 1927, the account is confirmed *nisi*.

No exceptions were filed and the adjudication was confirmed absolutely under the rules.